David R. Koch (Nevada Bar No. 8830)
Daniel H. Stewart (Nevada Bar No. 11287)
KOCH & SCOW LLC
11500 S. Eastern Ave., Suite 210
Henderson, NV 89052
Telephone: (702) 318-5040
Facsimile: (702) 318-5039
dkoch@kochscow.com
dstewart@kochscow.com

Attorneys for Plaintiff Alan Shinderman

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALAN SHINDERMAN, an individual, | Case No. 2:12-cv-00507 |
| Plaintiff, | **PLAINTIFF ALAN SHINDERMAN'S OPPOSITION TO DEFENDANTS PATRICIA L. CLEARY'S AND CLEARY LAW OFFICE'S MOTION TO DISMISS** |
| v. | |
| KEITH POLLINS, an individual, PATRICIA CLEARY, an individual; PATRICIA L. CLEARY LAW OFFICE; DOES 1 through 10, inclusive; | |
| Defendants. | |

Plaintiff Alan Shinderman hereby opposes Defendants Patricia L. Cleary's and Cleary Law Office's (referred to collectively as "Cleary") Motion to Dismiss Plaintiff's Complaint. This Opposition is based on the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral arguments that this Court may permit.

/ / /

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Cleary Defendants' Motion suffers from multiple fundamental flaws, and this Court should deny it. Shinderman's claims in this case center on the defendants' unlawful obtaining of his credit report without his permission. But the Cleary Defendants ask this Court to ignore their violation of the law because they ultimately used the ill-gotten credit report as an exhibit in a court filing. The subsequent use of the report, however, does not excuse its wrongful acquisition. The Cleary Defendants violated federal law by improperly obtaining the report, and amplifying the wrong by attaching it to a publicly filed court document does not excuse the violation.

In response to Cleary's arguments, neither the California litigation privilege nor California's anti-SLAPP law applies to federal causes of action. Shinderman's first cause of action asserts a violation federal Fair Credit Reporting Act (the "Act"), 15 U.S.C. § 1681 *et seq*. This reason alone necessitates denial of the Motion with respect to Shinderman's federal claim.

Second, Cleary has misconstrued Shinderman's claims related to the credit report. Neither Shinderman's federal claim nor his state-law privacy claim hinges upon the publication of the credit report in the referenced court filing. Both federal and state law render the unauthorized procurement of the credit report to be the actionable wrong. Cleary confuses and conflates the inferential evidence Shinderman uses to show that the Cleary Defendants wrongfully obtained the credit report (their publication of the credit report demonstrates that they must have obtained it improperly) as the claims themselves. Cleary had no legal right to obtain the report, and doing so gave rise to Shinderman's claims.

Third, because the Cleary Defendants focus on the use of the credit report rather than the procurement of it (in contrast to Shinderman's actual Complaint), they skirt an important distinction in California law governing the litigation privilege: the difference

between communicative and non-communicative acts. Shinderman is not suing solely because Cleary published his credit report in a court document—though that action certainly exacerbated the effect of the wrong—but rather because Cleary obtained the report illegally.  In the same way that a car thief cannot claim litigation privilege to excuse his conduct simply by attaching a picture of the stolen car as an exhibit to a court filing, Cleary cannot invoke litigation privilege to excuse the wrongful violation of Shinderman's privacy rights.

Finally, Cleary has not shown that California law should be applied to a conversion claim arising solely from tortious conduct that took place in Nevada (even assuming there were a conflict between the states' laws on this claim). The Defendants hired a Nevada private investigator to target a Nevada citizen and property located in Nevada. Under Nevada law, Shinderman has adequately pleaded a claim for conversion.

Accordingly, Shinderman respectfully requests that this Court deny Cleary's motion in its entirety.

## II.   ALLEGATIONS OF THE COMPLAINT

As stated by Cleary, a motion to dismiss should be granted only when it "appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims." *Rae v. Union Bank*, 725 F.2d 478, 479 (9th Cir. 1984).  Absent limited circumstances, the factual allegations of a complaint are assumed to be true, and in this case, Cleary does not dispute the essential facts alleged.

In his Complaint, Shinderman alleges that defendants Pollins and Cleary hired private investigators in Nevada to conduct surveillance on Shinderman.  (Compl., ¶14.) At defendants' instruction, physical tracking devices were placed on Shinderman's automobiles without Shinderman's knowledge or consent.  (Compl., ¶16.)  Using false pretenses, Cleary and Pollins obtained a confidential consumer credit report for Shinderman without his knowledge or consent.  (Compl., ¶¶17-18.)  Defendants later used this report as an exhibit to a declaration submitted by Keith Pollins.  (Compl., ¶19.)

-3-

When Shinderman learned of the report, he sent a demand letter to Cleary via counsel requesting all records pertaining to the acquisition of the consumer credit report, but Cleary's office refused to provide any documents. (Compl., ¶21.) After the stonewalling by Cleary's office, this lawsuit resulted.

## III.    LEGAL ARGUMENT

### A.    Cleary's Arguments Are Inapplicable to Shinderman's Federal Claims

"It is well settled that the Supremacy Clause of the United States Constitution grants the Congress the power to preempt state and local laws." *OEI v. N Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1098 (C.D. Cal. 2006) (citing *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665, 667 (9th Cir. 2003)).  It is "equally well settled that the California litigation privilege does not apply to federal causes of action . . . ." *Id.*, 486 F.Supp.2d at 1098 (citing *Irwin v. Mascott*, 112 F.Supp.2d 937, 962-63 (N.D. Cal 2000); *Martinez v. Cal.*, 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Pardi v. Kaiser Foundation Hosp.*, 389 F.3d 840, 851 (9th Cir. 2004); *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996); and *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d 1053. 1056 (N.D. Cal. 1998)).

Furthermore, California's "anti-SLAPP statue does not apply to federal law causes of action." *Hilton v. Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (citing *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F.Supp.2d 1172, 1180-82 (C.D. Cal. 2006)).

The Fair Credit Reporting Act preempts California law.  As such, the Cleary Defendants' arguments regarding application of California privilege and anti-SLAPP law in their Motion cannot be the grounds for dismissing Shinderman's federal cause of action.

### B.    The Litigation Privilege Does Not Apply to Shinderman's Claims

In order for the Cleary Defendants to employ the litigation privilege against Shinderman's claims, they resort to mischaracterizing the claims. Reading the motion, one would think Shinderman's sole grievance was the publication in a court filing of his

improperly obtained credit report. But that is not the basis of Shinderman's Complaint. It was the wrongful procurement of the report that is primarily at issue.

### 1. California's Litigation Privilege Does Not Apply

#### a. Shinderman's federal claim under the Act

Even if the California law applied to Shinderman's federal claim (it does not), Shinderman's claim under the Act speaks to the procurement of the report only. Under 15 U.S.C. §1681b, <u>obtaining</u> a credit report is prohibited except for certain limited purposes. (*See* 15 U.S.C. §1681b(f).) Cleary's purported purpose for obtaining the report did not qualify under the statute. Cleary does not even attempt to argue that it does. And no matter how they claim they used the credit report, Cleary is still be liable for violating the Act.

#### b. Shinderman's state-law claim for invasion of privacy: intrusion

Shinderman's second claim for invasion of privacy: intrusion mentions the publication of the credit report, but that allegation is secondary to claim itself. Shinderman is suing because the Cleary Defendants intruded on his privacy by obtaining the report without his knowledge and consent. By publishing it, they only made things worse.

Under either California or Nevada law, publication of misappropriated private information is not a required element of an invasion-of-privacy claim.

Nevada courts have looked to the Restatement 2nd for guidance on the tort of intrusion. The Restatement "formulates the tort of intrusion in terms of a physical invasion upon the 'solicitude or seclusion' of another, the rationale being that one should be protected against intrusion by others into one's private 'space' or private affairs." *See People For The Ethical Treatment Of Animals v. Berosini*, 111 Nev. 615, 630, 895 P.2d 1269, 1279 (1995). Examples of such tortious conduct includes "the meddling conduct of eavesdroppers, the unpermitted opening of other's mail, and the making of illegal searches and seizures." *Id.* To prevail on an intrusion claim the plaintiff must prove:

"(1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person. " *Id.* There is no requirement for subsequent publication or dissemination of information gained during the intrusion.

California has also adopted the Restatement 2nd's formulation of the tort of intrusion into private affairs. *Shulman v. Group W. Productions, Inc.*, 18 Cal.4th 200, 230-231, 955 P.2d 469, 489 (Cal. 1998). The elements of the California cause of action are identical to Nevada's, but California has additional case law delineating the parameters of the claim. "To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone or physical or sensory privacy surrounding, **or obtained unwanted access to data about the plaintiff**. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.*, 18 Cal.4th at 232, 955 P.2d at 490 (emphasis added). California courts have also held that "[plaintiff's] cause of action for invasion of her constitutional right of privacy **does not depend on the 'publication' or 'broadcast' of her [records] but rests on [Defendant's] conduct in reading those records."** *Susan S. v. Israels*, 55 Cal.App.4th 1290, 1299, 67 Cal.Rptr.2d 42, 47-48 (Cal. Ct. App. 1997) (emphasis added). The Court in *Susan S. v. Israels* specifically rejected the litigation privilege defense in a claim for invasion of privacy, explaining that the invasion is not immunized by later broadcasting the information in a court proceeding. *Id.*

California goes so far as to recognize separate privacy causes of action for public disclosure of private facts, and intrusion into private places, conversations or other matters. *See Shulman*, 18 Cal.4th at 214, 955 P.2d at 478 (citing *Forsher v. Bugliosi*, 26 Cal.3d 792, 808, 163 Cal.Rptr. 628, 608 P.2d 716 (Cal. 1980); *Kapellas v. Kofman*, 1 Cal.3d 20, 35–36, 81 Cal.Rptr. 360, 459 P.2d 912 (Cal. 1969); *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1482, 232 Cal.Rptr. 668 (Cal. Ct. App. 1986); *Diaz v. Oakland Tribune, Inc.*, 139 Cal.App.3d 118, 126, 188 Cal.Rptr. 762 (Cal. Ct. App. 1983)).

Once again, Shinderman is suing because defendants illegally intruded on his privacy by obtaining his credit report for a purpose unauthorized by law. Federal law's prohibition of Cleary's conduct is strong evidence that Shinderman had an expectation of privacy in his credit and financial information. While the Act allows procurement of a credit report for specific limited purposes, those limited purposes are entirely expected by the average person. When one applies for a loan, for example, it is reasonable to anticipate that the potential lender would research the applicant's past credit history. In this case, Shinderman had no reason to expect that his highly private information would be secretly accessed simply because he was dating someone involved in a messy divorce in another state. This is especially true when federal law prohibited such conduct.

To have a reasonable expectation of privacy does not require the existence of an unassailable seal between the information kept private and the outside world. In all of the examples of tortious intrusion listed by the Nevada Supreme Court—eavesdropping, unpermitted mail opening, and illegal searches and seizures—there are acceptable legal reasons and approved legal procedures for obtaining information otherwise protected by law. Shinderman's credit report could be obtained by others, but only in accordance with the law. But the Cleary Defendants not only ignored the Act when they went poking into Shinderman's private information, they also made no attempt to do so in any reasonable or permissible way. There was no subpoena, no letter, no phone call, or anything else that one would expect in the normal course of discovery during active litigation. Accordingly, they have no excuse for their conduct.

        **c.**        **The California litigation privilege does not apply to non-communicative acts**

Even if both California and Nevada law did not provide Shinderman with an invasion of privacy claim irrespective of the public disclosure of private information (they do), the litigation privilege is still irrelevant to this dispute, because the unlawful behavior at issue was non-communicative.

In the seminal case of *Kimmel v. Goland*, 51 Cal. 3d 202, 793 P.2d 524 (Cal. 1990), the California Supreme Court held that the litigation privilege does not cover non-communicative acts or conduct. At issue in the case was the question of whether the litigation privilege barred an invasion of privacy claim involving the unauthorized recordings of telephone calls in anticipation of litigation. The Court said no. The illegal recording was a non-communicative act that did not require publication to be a recognizable wrong. *Id.* 51 Cal.3d at 212. In other words, the action itself was the wrong, not the publication of the action in a subsequent court proceeding. "'[T]he [privilege] has always attached only to *statements* or *publications* made in connection with the applicable proceeding." *Kimmel,* 51 Cal.3d at 211 (quoting *Westlake Community Hospital v. Superior Ct.*, 17 Cal.3d 465, 482, 551 P.2d 410 (Cal. 1976)) (emphasis in original); *see also Kashian v. Harriman*, 98 Cal.App.4th 892, 916, 120 Cal.Rptr.2d 576 (Cal. Ct. App. 2002).

Apparently aware of these limitations, Cleary tries to expand the litigation privilege to include "communications **or actions** taken in relation to litigation…" (Motion at 8:15-16.) There is no support, however, for applying the privilege to illegal actions simply because there is a pending lawsuit tangentially involving a third party. Where this the rule, a defendant could murder a key witness once a lawsuit was pending, for example, claiming that this action "related to the lawsuit" and should therefore be exempt from prosecution. Analogous to this scenario, Cleary asks the Court to excuse their illegal conduct solely because it was later included as part of a court filing. But Cleary's attempt to insulate his conduct with the justification of a pending divorce case is unavailing. The Cleary Defendants are pushing a reading of the California litigation privilege that tramples both logic and common sense. Under their view, the privilege would protect an attorney who hacked into a person's private email or bank account so long as that attorney also chose to include her findings in a document filed with the court. *See Kimmel*, 51 Cal.3d at 212. The litigation privilege is not so broad, nor is it a tool

for misrule. This Court should deny the Cleary Defendants' efforts to bend both Shinderman's claims and governing law to try to make bad behavior disappear.

### d. The litigation privilege cannot apply to Shinderman's conversion claim

To the extent Cleary argues that the litigation privilege also applies to Shinderman's conversion claim, the Cleary Defendants stretch the privilege beyond the breaking point. According to the Cleary Defendants, the "Litigation Privilege Bars All Claims Against Cleary." (*See* Motion, Doc. #7, at 8:13.) "All claims" must mean conversion too. If there were any doubt, the Cleary Defendants expressly tie all of the "Acts" alleged in the Complaint to the litigation privilege. "The acts complained of not only took place in the course of a California litigation, they were conceived of and set in motion in California. The acts that took place were part of a litigation strategy for a California case." (*See* Motion, Doc.#7, at 7:18-21.)

The conversion scheme itself was likely hatched during the course of litigation, but there is absolutely nothing communicative about the plan carried out. Are the Cleary Defendants arguing that a theft should be excused so long as the item stolen were used as a trial exhibit? It is hard to imagine anyone making such a stand in good faith, but Cleary has blanketed all of Shinderman's claims under the assertion of a privilege with neither legal nor common-sense limits.

### 2. The Nevada Litigation Privilege Is Equally Unavailing To the Cleary Defendants

The Nevada litigation privilege does not differ in any material way from the California privilege. The Cleary Defendants concede that "[a]lthough Nevada also applies an absolute litigation privilege, the policy behind California's application of this principle is decidedly more articulated." (*See* Motion, Doc. #7, at 7:16-17.) And given the Cleary Defendants' inescapable preference for the California privilege, one would assume they believe that the California privilege provides more robust protection than

does the Nevada privilege. As such, because the California privilege offers the Cleary Defendants no protection, the Nevada privilege fails as well.

The Nevada litigation suffers from the same limits as the California privilege. The Nevada Supreme Court has regularly recognized Nevada's privilege. The Cleary Defendants cite three cases from Nevada's highest court, and all three reference the privilege with respect to "communications" made during judicial proceedings. *See Circus Circus Hotels v. Whitherspoon*, 99 Nev. 56, 60, 657 Nev. P.2d 101, 104 (1983) (Recognizing Nevada's long-standing common law rule that **communications** in the course of a judicial proceeding are absolutely privileged." (Emphasis added)); *Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640, 643-44 (2002) (quoting *Circus Circus*, and deciding a case involving allegedly defamatory communications); *Hampe v. Foote*, 118 Nev. 405, 409, 47 P.3d 438, 440 (2002) *overruled in part on other grounds by Buzz Stew, LLC. v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008) ("An absolute privilege bars any civil litigation based on the underlying **communication**." (emphasis added)).

The Cleary Defendants again attempt to stretch the privilege by claiming that "[u]nder Nevada law, an 'absolute privilege bars *any* civil litigation' based on the communication or conduct. *Hampe v. Foote*, 1188 [sic] Nev. 405, 409, 47 P.3d 438. 440 (2002)." (*See* Motion, at 11:8-9.) Nevada law in general and *Hampe* in particular say no such thing. There is no Nevada law stretching the litigation privilege to "communication or conduct."[1]

The Cleary Defendants are, yet again, misconstruing the law and Shinderman's allegations. Nevada's privilege, like California's, offers the Cleary Defendants no protection for their illegal intrusion into Shinderman's private life. To hold otherwise, would be to suspend all the laws save one. As long as attorneys were operating under

---

[1] To the extent the unpublished, non-binding decision in *Bullivant House Bailey v. Eighth Judicial*

-10-

the shadow of an active case and proffered client interests, they would be free to justify all law breaking with cover of the litigation privilege. Such a result would be untenable.

### C. California Law Does Not Govern Shinderman's Conversion Claim

The Cleary Defendants make no effort to demonstrate an actual conflict between Nevada conversion law and California conversion law. Nor do the Cleary Defendants argue why California conversion law should supersede Nevada conversion law. The Cleary Defendants offer nothing more than a generic argument for universal application of California law. But Shinderman's conversion claim differs from his other two claims. Consequently, the conversion claim demands a separate look under the choice-of-law analysis.

Shinderman's has alleged that the Cleary Defendants hired a Nevada private investigator to attach tracking devices to Nevada property (Shinderman's cars), to monitor the travel of a Nevadan who was not a party to the California lawsuit. The Cleary Defendants' sole reasons for asserting the governance of California law is their claim that the illegal plan was hatched in and ordered from California as part of the Cleary Defendants' litigation strategy. Ignoring for the moment the fact that there is no way to verify whether the plan was actually ordered from California rather in Nevada, the Cleary Defendants' argument cannot be sustained under Nevada law.

There is no demonstrated conflict between the laws of the two states, and, even if there were, Nevada has the most significant relationship to the occurrence of the alleged wrongdoing. *See General Motors Corp. v. Eighth Judicial District Ct.*, 122 Nev. 466, 134 P.3d 111 (2006); *see also Ins. Co. of North America v. Hilton Hotels U.S.A.*, 908 F.Supp. 809 (D. Nev. 1995). The Cleary Defendants actively and intentionally targeted a Nevadan and his property. Nevada has a strong interest in protecting its citizens from the intentional harm carried out by other Nevadans at the instruction and expense of their out-of-state employer.

### D. Shinderman Has Properly Pleaded a Claim for Conversion

Under Nevada law, Shinderman has adequately pleaded his claim for conversion. "Conversion is a 'distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such rights or title.'" *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 607, 5 P.3d 1043, 1048 (2000) (quoting *Wantz v. Redfield*, 74 Nev. 196, 198, 326 P.2d 413, 414 (1958)). The Nevada Supreme Court has noted that "conversion **generally** is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Edwards v. Emperor's Garden Restaurant*, 122 Nev. 317, 328-29, 130 P.3d 1280, 1287 (2006) (emphasis added). But the Cleary Defendants are pushing an application of *Edwards* that the Nevada Supreme Court specifically rejected and that *Edwards* did not overrule.

In *Bader v. Cerri*, 96 Nev. 352, 609 Nev. 314 (1980), the defendant, like Cleary, attempted to import the measure of damages into the definition of conversion. *Id.* 96 Nev. at 356, 609 P.3d at 317 ("[Defendant] argues that since the measure of damages [full value] is part of the definition of conversion, and since [plaintiff] did not seek to recover the full value of [the property], there was no conversion."). The court rebuffed defendant's position. "We reject that argument. Nevada case law does not suggest that the measure of damages is a part of the definition of conversion. Neither does Nevada case law declare the full value of the property converted to be the sole measure of damages." *Id.* Furthermore, whether a conversion has occurred is generally a question for the jury. *Evans*, 116 Nev. at 606, 5 P.3d at 1048.

Finally, the Cleary Defendants' refashioning of the alleged wrongs as something minor, inconsequential, or simply not worth the fuss, does not square with the recent decision of the United States Supreme Court in *U.S. v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (January 23, 2012). In *Jones* a unanimous Supreme Court held that the attachment of a GPS device to a vehicle was a "search" that required a warrant. Because the installation

of the GPS met the standard for a common-law trespass, the investigation made the conduct a "search" pursuant to the Fourth Amendment of the U.S. Constitution. *Id.*, 132 S.Ct. 949.

Writing for the majority, Justice Scalia stated that the "Government physically occupied private property for the purpose of obtaining information." *Id.*,132 S.Ct. at 949. Justice Sotomayor, concurring, wrote that the "Government had usurped [defendant's] property for the purpose of conducting surveillance[,]" and that the Government had "physically invade[d] personal property to gather information." *Id.*, 132 S.Ct. at 954-55. She also recognized the serious privacy concerns by noting "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about [his or her] familial, political, professional, religious, and sexual associations." *Id.*, 132 S.Ct. at 955 (citing *People v. Weaver*, 12 N.Y.3d 433, 441-442, 882 N.Y.S.2d 357, 909 N.E.2d 1195, 1199 (2009)).

The fact that a unanimous Supreme Court ruled the warrantless placement of a GPS unit on a vehicle to be unconstitutional not only speaks to Nevada's interest in having Nevada law applied, but also to the seriousness of the Cleary Defendants' wrongful behavior.

Shinderman has properly pleaded his claim for conversion, and dismissal is not warranted. Nevertheless, should this Court decide that Shinderman's claim is better matched with a cause of action for trespass to chattels, or as an additional claim for invasion of privacy, Shinderman respectfully requests that this Court allow him the opportunity to amend the Complaint.

## IV. CONCLUSION

For the above-stated reasons, Shinderman respectfully asks this Court to deny the Cleary Defendants' Motion to Dismiss.

Dated: June 18, 2012            **KOCH & SCOW, LLC**

                                By: /s/ David R. Koch
                                    David R. Koch
                                    Daniel H. Stewart
                                    Attorneys for Plaintiff Alan Shinderman

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that on June 18, 2012, I caused the following document entitled: **PLAINTIFF ALAN SHINDERMAN'S OPPOSITION TO DEFENDANTS PATRICIA L. CLEARY'S AND CLEARY LAW OFFICE'S MOTION TO DISMISS** to be served by electronic filing to the following counsel of record in this action:

>Wade M. Hansard, Esq.
>Dylan P. Todd, Esq.
>McCormick, Barstow, Sheppard,
>   Wayte & Carruth LLP
>8337 W Sunset Road, Ste 350
>Las Vegas, NV  89113
>(702) 949-1100
>(702) 949-1101 Fax
>*Attorneys for Patricia Cleary and*
>*Patricia L. Cleary Law Office*

I declare under penalty of perjury under the laws of the State of Nevada that the above is true and correct.  Executed on June 18, 2012 at Henderson, Nevada.

/s/   Andrea W. Eshenbaugh
Andrea W. Eshenbaugh

-15-